UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GEOFFREY LAMAR HIGHTOWER,

    Defendant.
_____/

Case No. 11-20564
Hon. Mark A. Goldsmith

**OPINION & ORDER
GRANTING DEFENDANT GEOFFREY LAMAR HIGHTOWER'S RENEWED
MOTION TO REDUCE SENTENCE (Dkt. 785) AND DENYING MOTION FOR
RECOMMENDATION OF PLACEMENT IN A RESIDENTIAL RE-ENTRY PROGRAM
(Dkt. 712) AS MOOT**

This matter is before the Court on Geoffrey Lamar Hightower's renewed motion to reduce sentence (Dkt. 785). Hightower was sentenced on June 13, 2014, to mandatory 10 years' imprisonment after he pleaded guilty to conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. 846 and § 841(b)(1)(A). See Judgment (Dkt. 393). Hightower will be eligible for release on home detention in November 2021, and he has an expected release date of May 20, 2022. Hightower now seeks a sentence reduction because he has underlying medical conditions that make his susceptible to the more severe symptoms of COVID-19. The Government opposes Hightower's release, because it argues that Hightower presents a danger to the community (Dkt 786). Hightower filed a reply brief in

support of his motion arguing that the Government's concerns are misplaced (Dkt. 788). For the reasons explained below, the motion is granted.

## I. BACKGROUND

Hightower is currently serving his sentence at the Allenwood Low Federal Correctional Institution ("Allenwood Low FCI") in Allenwood, Pennsylvania. The Bureau of Prisons' ("BOP") website reports that at Allenwood Low FCI there are no inmates and no staff members with active cases of COVID-19.[1] As noted in the Government's previous response, the BOP has implemented a COVID-19 action plan to minimize the risk of COVID-19 transmission into and within its facilities, which includes quarantining inmates, taking social distancing measures, and providing personal protective equipment to staff and inmates. Previous Resp. at 5-7 (Dkt. 735).[2]

Hightower is fifty years old and has been diagnosed with Type II diabetes, and he has a body mass index ("BMI") above 30. Id. at 5. Hightower seeks a reduction in sentence under the First Step Act, because he argues that he is particularly susceptible to COVID-19. If released, he intends to live with his fianceé, Tia Legion, who wrote a letter on his behalf expressing her support. Legion Letter, Ex. 4 to Mot. (Dkt. 785-5). Hightower also has two daughters with whom he has remained close. Hightower Presentence Report ("PSR") ¶ 49 (Dkt. 736); Mot. at 19. He says that this network of support will help him succeed if he is released. Mot. at 19.

Prior to his incarceration, Hightower had been employed full-time for more than a decade doing landscaping and snow removal. PSR ¶¶ 56-58. While in custody, he took commercial truck driving courses, and, on release, he plans to seek employment in the trucking industry. Mot. at 19.

---

[1] See https://www.bop.gov/coronavirus/ (last visited on November 11, 2020).

[2] The Government incorporates it response to Hightower's original motion for a sentence reduction. Resp. at 4.

2

He has a relative who owns a commercial trucking company with whom he hopes to secure a job. Id.

## II. LEGAL STANDARD

"The First Step Act of 2019, Pub. L. 115-391, 132 Stat. 5194, modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582," such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, ---F.3d---, 2020 WL 6268582, at *3 (6th Cir. Oct. 26, 2020). Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may reduce a sentence if, after considering the sentencing factors set forth in § 3553(a), the court finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

In the commentary to U.S.S.G. § 1B1.13, the Sentencing Commission has enumerated several extraordinary and compelling reasons justifying a reduction of sentence, including the "Medical Condition of the Defendant," "Age of the Defendant," and "Family Circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C). Some examples of compelling reasons are medical conditions "with an end of life trajectory," a defendant's serious physical deterioration related to the aging process, and death or incapacitation of a caregiver of a defendant's minor child or children. Id. The Guidelines also contemplate "Other Reasons" where the defendant has "extraordinary and compelling reasons other than, or in combination with" the other enumerated reasons. U.S.S.G. 1B1.13 cmt. n.1(D). "Beyond the extraordinary-and-compelling-reasons requirement, this policy statement also requires a district court to find that 'the defendant is not a danger to the safety of

any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" Ruffin, 2020 WL 6268582, at *4 (quoting U.S.S.G. 1B1.13(2)-(3)).

### III. ANALYSIS

The Government concedes that there is an extraordinary and compelling reason to release Hightower, because his underlying medical conditions make him more susceptible to the severe effects of COVID-19. Previous Resp. at 19. However, it argues that because Hightower is a danger to the community, his early release is not warranted. Resp. at 6-8. Specifically, the Government argues that Hightower is a danger to the community because he pleaded guilty to being part of a serious drug conspiracy, he has a lengthy criminal history, he was disciplined while incarcerated, and he has used a number of aliases. Resp. at 4-5. Hightower argues that the Government's concerns are misplaced. Reply at 1-5. The Court agrees with Hightower.

Before granting a sentence reduction under the First Step Act, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses and the history and characteristics of the defendant, the seriousness of the offenses, and the need to protect the public from further crimes by the defendant. And the Court must consider whether the defendant is a danger to "the safety of any other person or to the community." 18 U.S.C. § 3142(g).

Hightower does not dispute that his underlying conviction is serious. He received a 120-month mandatory custodial sentence, even though his guidelines range was 78 to 97 months. Mot. at 14. Having served 84 months, his earliest release to home detention would not be until November 2021. Computation Data, Ex. 3 to Mot., at 1 (Dkt. 785-4). Although Hightower's underlying offense is serious, he has served a significant portion of his sentence, and there are other considerations that weigh in favor of his release.

The Government argues that Hightower's criminal history makes him ill-suited for early release. Resp. at 4. Hightower argues that his criminal history from almost 25 years ago does not indicate that he is currently dangerous. Reply at 1. The Court agrees. Hightower pleaded guilty to possession of a controlled substance in 1989, assault in 1990, and receiving and concealing stolen property in 1991. PSR ¶¶ 39-41. Hightower received probation on each of those convictions. Id. In 1996, Hightower received an eight-year custodial sentence after he pleaded guilty to conspiracy to traffic in controlled substances. Id. ¶ 42. He was released on parole in 1998. Id. He had no parole violations. Id. Convictions from more than two decades ago, when Hightower was a young man, are poor indicators of Hightower's current dangerousness.

During his current incarceration, Hightower had a single disciplinary action for possession of a hazardous tool. Hightower Disciplinary Record (Dkt. 737). There are no details describing the hazardous tool, but there is some indication that it might have been a cell phone. See Resp. at 2; Reply at 4. Possession of a cell phone while incarcerated does not reflect well on Hightower. On the other hand, Hightower's rehabilitation efforts are commendable. Hightower had a moderate to severe drug problem before his incarceration. PSR ¶ 54. While incarcerated, Hightower completed a 40-hour drug rehabilitation program, Bureau of Prisons' 9-month, 500-hour Residential Drug Abuse Program, and he completed numerous adult education courses. See Certs. of Achievement at PageID.6096-6102 (Dkt. 722); see also Inmate Education Data, Ex. 1 to Mot. (Dkt. 785-1). One mistake does not outweigh years of rehabilitation efforts.

Hightower also has a history of complying with Court orders. The Court allowed Hightower to remain on pretrial release for three years on the underlying offense. During that time, he managed to abstain from any drug use, which was one of the conditions of his release. PSR ¶ 54. And Hightower self-surrendered when directed to do so in 2014. Mot. at 15. These

actions give some credence to Hightower's assertion that he will comply with any terms of release imposed by the Court.

The Government argues that Hightower's use of aliases and alternative social security numbers shows deceit, dangerousness, and disregard for social norms. Resp. at 7. However, it is not clear when or in what context the alternative Social Security numbers were used, which makes it difficult to draw any inferences about Hightower's current dangerousness. Hightower's use of aliases has a similar problem. The aliases are listed in his PSR, but how or why Hightower used the aliases is not clear. Based strictly on looking at the list of aliases, with the exception of a few nicknames ("Chief" and "Jeff Jazzy"), the rest are variations on his own name, e.g., Geoffrey Rhymes (birth name), Geoffrey Hightower (name under which he was charged), and Jeffrey Lee (his mother's maiden name). PSR at 2. There is no indication that Hightower has used these identities for some illegal or dangerous purpose. Hightower's aliases and use of alternate social security numbers do not support a finding that he is a current danger to the community.

Hightower's record is not spotless, but there are many indicators suggesting that he is not a danger to the community. Hightower has served the majority of his sentence, and it appears that he has used that time improving himself and preparing for his eventual release. He was designated to a low security facility and he has a history of complying with court orders. Hightower has made substantial rehabilitation efforts and has a release plan in place. Hightower does not pose a danger to the community.

Hightower is a suitable candidate for early release in light of the grave dangers posed by COVID-19 to someone with his underlying medical conditions. Therefore, his motion is granted.

### IV. CONCLUSION

Based on the forgoing, the Court finds that extraordinary and compelling reasons warrant Hightower's early release; his release is consistent with the § 3553(a) factors; Hightower is not a danger to the safety of any other person or to the community; and his release is consistent with the Sentencing Guideline policies. Therefore, his motion to reduce sentence (Dkt. 785) is granted. Because the Court is granting Hightower's motion to reduce sentence, his motion for recommendation of placement in a residential re-entry program (Dkt. 712) is denied as moot. Hightower's term of imprisonment is reduced to time served. His term of supervised release remains at five years and is subject to the terms of the Judgment entered on June 13, 2014 (Dkt. 393).

This order is stayed for up to fourteen days, for the verification of Hightower's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure Hightower's safe release. Hightower shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Hightower to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Hightower's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

SO ORDERED.

Dated: November 18, 2020             s/Mark A. Goldsmith
       Detroit, Michigan            MARK A. GOLDSMITH
                                                   United States District Judge