UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE WILLIAMSON, JR.,

    Petitioner,

Case No.  11-cr-20564
Honorable Mark A. Goldsmith
Magistrate Judge David R. Grand

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

**OBJECTIONS TO REPORT AND RECOMMEDATION (ECF 748) TO DENY PETITIONER'S MOTION (ECF 630) UNDER 28 U.S.C. §2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE AND OBJECTIONS TO ORDER (ECF 749) DENYING PETITIONER'S MOTION FOR DISCOVERY IN ECF 659**

NOW COMES CLARENCE WILLIAMSON, by and through counsel, S. Allen Early, and hereby files the following objections to the Report and Recommendation of the Magistrate Judge (Exhibit A).

At the outset, Petitioner must give the court background as to the most important claim herein: the perjury of witness Gregory Jackson and the subordination of perjury by AUSA David Portelli.  The theory of the prosecution's case at trial was that Petitioner ran a conspiracy from 2000-2010 with deliveries of cocaine to Detroit to Gregory Jackson twice a month every month.  The prosecution continued this theme in its opposition to Petitioner's compassionate release pleadings.  At trial Gregory Jackson gave substance to the theme by testifying that he received kilos of cocaine from Petitioner twice a month every month for 10 years, 2000-2010.  See Vol. 5, Doc. 576, Page ID 2973-3016.  The PSI report in this case also stressed and adopted the 10 year twice a month theme of the government and emphasized that Jackson was the basis for its

1

conclusion and also stated Jackson and Edwards worked together in the receipt of cocaine. See 2255 Motion (630) at Page ID 3982.

During the government's direct on Jackson, Mr. Portelli testified and encouraged Mr. Jackson to testify that he was on probation in 2006 for a drug conviction. See Vol. 5, Doc. 576, Page ID 3987. Mr. Jackson agreed with Portelli's testimony. Id. Petitioner's undersigned counsel was not aware at trial that Jackson was in prison for 30 months commencing January 2006, for the drug conviction. See Exhibit E, Affidavit of Counsel. In October 2018, paralegal Otis Paris discovered a judgment of conviction which indicates that Jackson was in prison for 30 months commencing about January 2006. See Exhibit F incorporated herein by this reference. Mr. Paris included the judgment as Exhibit C to his Affidavit in Support of Clarence Williamson's 2255 Petition, ECF No. 658, Page ID 4228 at 4229. Petitioner challenged Jackson's testimony at trial and sentencing as being false and not credible; Petitioner also challenged the "every month" theory at sentencing. See ECF 630, Page ID 3981. At that time, Petitioner and counsel still did not know about Jackson being in prison.

Petitioner now turns to his first objection to the Report and Recommendation, i.e., there are implied *Brady, Giglio* and *Napue* v. *Illinois* claims in the original 2255 Motion that were not ruled upon by the Magistrate Judge. These implied claims relate to the prosecutor's failure to turn over material exculpatory evidence of Jackson's imprisonment, Jackson's perjury and AUSA Portelli's subornation of perjury.

Petitioner contends that he has alleged *Brady, Giglio and Napue v. Illinois* claims in his original 2255 Motion regarding the prosecutor's failure to turn over material exculpatory evidence, Jackson's perjury and AUSA Portelli's subornation of perjury. See Motion, ECF 630 at page ID 3981, 4006, 4026-4027; Reply, ECF 655 at page ID 4180-4181. The objection of counsel,

2

referenced at page ID 3981 of Petitioner's Motion, clearly challenges the testimony of Jackson as false and not credible; these same objections reference a gap in delivery of cocaine that should reduce the quantity level and Jackson's incarceration clearly supplies a gap. The prosecutor also in open court during trial swore that the government had turned over all *Brady* material. See Jury Trial TR, Vol. 3, Doc. No. 574, page 254. Petitioner contends, as in *Banks v. Dretke, supra*, that his Gregory Jackson *Giglio, Brandy* claim has been aired by "implied consent" so that Rule 15(b) requires the claim to be treated as if raised in the 2255 Motion. Id.[1]

The Gregory Jackson *Brady* claim satisfies the three elements of *Brady*. The claim is that the prosecution did not disclose to the defense that Jackson was in prison for 30 months commencing about January 2006. (See Exhibit B). There is also a *Giglio, Napue v. Illinois* claim for the prosecutor knowingly or unknowingly allowing Gregory Jackson to testify falsely that he received cocaine from Petitioner twice a month every month from 2000-2010 and the prosecutor's failure to correct the false testimony. In addition, the prosecutor suborned perjury as discussed *infra*. The three elements for *Brady* are: (1) evidence must be favorable to accused and Jackson being in prison is favorable to Petitioner; (2) the government must suppress the evidence as here, (3) and the evidence must be material so that prejudice to Petitioner occurs. In this case the favorable evidence about Jackson being in prison combined with Jackson's perjury on the stand and the prosecution's failure to correct and subordination of perjury is material and puts the case in such a different light as to "undermine confidence in the verdict." *See Banks, supra*, 540 U.S. at 672.

---

[1] *Banks v. Dretke,* 540 U.S. 668 (2004), cited by Petitioner at Page ID 4027 contains a due process, fair trial analysis similar to *Giglio* relating to government misconduct.

3

Petitioner also has established cause for failure to specifically reference the specific nature of Jackson's lies and AUSA Portelli's participation in his initial *Brady, Giglio* (or *Banks*) claims.[2] See *Banks*, 540 U.S. at 671.[3]

Petitioner has shown cause for not raising the Jackson and Portelli claims as stated in *Banks*: the prosecution clearly withheld exculpatory evidence because the prosecutor did not correct Jackson's perjury on the witness stand. Indeed, the prosecutor joined in and encouraged the perjury when the prosecutor stated during direct on Jackson that "you were on probation or parole for that cocaine conviction. When was that, when were you on probation or parole for that?" Jury Tr, Vol. 4, doc. #576, page ID 2987. Jackson answers the question by saying "beginning of 2006." *Id.* The beginning of 2006 is when Jackson was to report to prison. See Jackson Judgement at Exhibit B.[4] This is an egregious violation of *Brady, Giglio, Napue* and *Banks*. The second and third because elements stated in Banks are satisfied here because Petitioner relied on the prosecutor's recital that Petitioner had received everything known to the government and the prosecutor's testimony that Jackson was on probation. 540 U.S. at 692; Jury Tr, vol. 3, doc. #574, page 254, December 4, 2014.

Petitioner's counsel did receive a document listing conviction of Gregory Jackson, but the document did not contain the sentence for the drug conviction in Michigan. See Affidavit of S. Allen Early, attached hereto as Exhibit E. However, it was reasonable for Petitioner to rely on the prosecutor's full disclosure representation and rely on the prosecutor's statement that Jackson was on probation in 2006 for the drug offense. It was also appropriate for Petitioner to assume that

---

[2] *Brady v. Maryland, 373 U.S. 83; Giglio v. United States, 405 U.S. 150.*

[3] Although Banks is a state court habeas appeal relating to what issues were raised in the state court proceedings so as to allow a ruling in federal court, the analysis should also apply to a 2255 proceeding. See *Amodo v. United States*, 743 Fed. Appx. 381, 386 (11th Cir. 2018) (Rule 15(b) applies to 2255 proceeding where implied issues have been litigated by the parties). In this case, the parties litigated the credibility of Jackson at trial and sentencing.

[4] Jackson also lied about living in Pennsylvania during the alleged conspiracy when the Judgment states that his residence was in Los Angeles, CA. See Exhibit B; Doc. 576, Page ID 2997, 3005, to 2977-78, 2985-86.

Mr. Portelli would not stoop to improper litigation conduct to advance prospects for gaining a conviction. *See, Banks*, 540 U.S. at 692-694, and cases cited therein.

Accordingly, Petitioner submits that his *Brady, Giglio, Napue* claims as to Jackson and Portelli are implied in his 2255 Motion and should be adjudicated. See Rule 15(b), Federal Rules of Civil Pro. In order not to delay proceedings, however, in the event the Court does not agree, Petitioner in a few days will be filing a motion to amend. Petitioner incorporates herein the legal arguments regarding *Brady* and *Giglio* contained in the motion to amend.

This case should be dismissed due to the perjury of Jackson and the subornation of perjury by Mr. Portelli. See *Napue v. Illinois*, 360 U.S. 66, *Brady, Giglio*.

I

ADDITIONAL OBJECTIONS

Petitioner objects to the Ground Two conclusion of the Magistrate that Petitioner's Ground 2 statute of limitation claim and withdrawal from conspiracy claim as to 2006 to 2011 fails. Petitioner also objects to the Magistrate's failure to discuss or rule on Petitioner's multiple conspiracy claim raised at Page ID 3989 of Petitioner's Motion (ECF 630).

Petitioner objects to the conclusion in Ground Ten that the drug amounts utilized at sentencing are correct, that Petitioner is not entitled to an evidentiary hearing regarding same, and that the Petitioner's sentence should not be vacated. The Magistrate also did not accept Petitioner's argument that the trial Court failed to make specific findings of fact regarding Petitioner's quantity objections. Petitioner objects to the foregoing.

Petitioner objects to the conclusion in Ground 12 that Petitioner was the supplier of cocaine on January 31, 2011, to Anthony Edwards.

5

Petitioner objects to conclusion in Ground 16 and Ground 7 that *Brady* was not violated by virtue of the prosecutor's failure to turn over Title III wiretap investigative tapes and reports on Hightower, the person that Petitioner contends was the supplier of cocaine on January 31, 2011, to Anthony Edwards. See Report and Recommendation at Page ID 6510.

Petitioner objects to the failure to grant evidentiary hearing.

Petitioner objects to the order (ECF 749) denying Petitioner's motion for discovery (ECF 659) of prison confinement records for Gregory Jackson. This was an egregious error given that paralegal Otis Peris filed an Affidavit in Support of Petitioner's 2255 Motion (ECF 658) wherein the newly discovered evidence of Gregory Jackson's prison record in 2006 and later was attached as Exhibit C.

Petitioner hereby incorporates the foregoing Affidavit of Otis Paris herein and adopts all arguments made by Mr. Paris.

II

ARGUMENT ON OBJECTIONS

A.  Ground 10 Drug Amounts

Petitioner specifically objected at trial that the drug quantity amounts are "not accurate and not supported by credible testimony." See 2255 Motion at Page ID 3981 and 4014. Petitioner further objected that "Jackson did not have credible basis for his estimates"; the calculation in the PSI is based on 10 years and the testimony" indicated there were breaks in time when no cocaine was being delivered." Petitioner tendered about 38 objections to the PSI quantity numbers.

Gregory Jackson testified that he was a participant and recipient when Williamson brought cocaine to Detroit twice a month from 2000-2010 from which Jackson received at least 450 kilograms for himself alone. See ECF 630, Page ID 3982, Response by Probation to Petitioner's

6

Objections to Quantity. Anthony Edwards, according to the government and probation, testified similarly. *Id*.

The above testimony is false, and Jackson lied at trial; Jackson was in prison commencing in 2006 for 30 months. See Exhibit B. Judgment of conviction. At trial, Petitioner and counsel were not aware of Jackson's imprisonment and thus were unable to expose the lies. Jackson's lies also expose Edwards lies at trial as the government's position at sentencing was that Jackson and Edwards worked with Petitioner to receive the cocaine twice monthly every month for 10 years. See ECF 630, Page ID 3982 where probation "relied upon information provided by the government to prepare the offense conduct portion of the presentence investigation" and concluded that "Gregory Jackson and Anthony Edwards" received cocaine twice a month for 2000-2010 for a total of 450 kilograms, of which Jackson received 400 kilograms. If Jackson was lying about 2006-2010, then Edwards also lied about working with Jackson to receive the cocaine in 2006-2010.

Petitioner raised a "gap" argument regarding cocaine "every" month for 10 years. ECF 630, Page ID 3981. Although Petitioner did not have the explicit gap evidence regarding Jackson being in prison, the issue was raised and therefore the Jackson prison issue should be considered as part of the original habeas claim related to sentencing. Moreover, Ground 10 objection allows the Court to rule on the Jackson perjury and Portelli subornation of perjury issue because the Ground 10 issue and objection attacks credibility, false testimony and the quantity attributable to Petitioner, and the Jackson/Portelli perjury also related to quantity.

In addition, the sentencing court erred at sentencing in relying upon a PSI when facts were in dispute regarding drug amounts. In this case, the court merely overruled Petitioner's objections

7

as to quantity and adopted the PSI without fact finding as required in Fed. R. Crim. Proc. 32 (i) (3) (B). This issue was raised by Petitioner at Page ID 4014 of his 2255 Motion.

Withal, Petitioner's sentence should be vacated, an evidentiary hearing should be held, and Petitioner should be re-sentenced. Moreover, Petitioner's conviction should be vacated.

B.      Ground Two Statute of Limitation and Multiple Conspiracy Claims

Petitioner's statute of limitation claim emerges as a viable defense with the elimination of cocaine deliveries from 2006-2010. There is a five – six-year gap between the Oklahoma stop in February 2005 and the Kendra Smart stop on February 25, 2011, and the January 31, 2011, alleged sale by Williamson to Edwards. With the deletion of Jackson's testimony and Edwards testimony about Jackson and Edwards receiving cocaine from Petitioner in 2006-2010, there is no drug activity testimony for that period of time in relation to cocaine. Thus, the 5-year statute of limitation starts to run in February 2005 and ends in February 2010, Petitioner was indicted in 2011. See 18 U.C.C. § 3282. The five-year gap as to cocaine is strongly indicative of withdrawal from cocaine conspiracy and the burden is on the government to prove that the cocaine conspiracy extended past February 2005. The government has not made such a showing with the testimony of Jackson and Edwards excluded as to 2006-2010.

Had counsel known about Jackson/Portelli perjury, counsel would have argued a statute of limitations defense at trial.

Petitioner's multiple conspiracy argument made at Page ID 3989 of his Motion (ECF 630) was not ruled upon by the Magistrate. With the elimination of 2006-2010 cocaine deliveries to Jackson/Edwards, the multiple conspiracy argument is viable because the Kendra Smart (2-25-11) and Hightower allegations (1-31-2010) occur 5-6 years after the Oklahoma stop in 2005, which

8

ended the cocaine conspiracy. Petitioner contends that the 2011 allegations relate to a different conspiracy.

The jury never heard a statute of limitations defense because counsel did not know Jackson was in prison from 2006 for 30 months. The jury never heard testimony about the 2006-2010 gap where Jackson was in prison and thus could not make a reasoned judgment on the multiple conspiracy defense raised by Petitioner.

C.  Ground 12 Objection Regarding January 31, 2011, Sale of Cocaine

Petitioner was denied a fair trial by admission of false testimony and insufficient evidence. The government contends that Petitioner, not Hightower, sold cocaine to Edwards on January 31, 2011, for delivery to Jones. Petitioner contends that Hightower sold the 4 kilos of cocaine to Edwards. Petitioner contends that mere suspicion or speculation will not support an allegation against him, and that the government's proof was not beyond a reasonable doubt.

In this case, the government's theory was that Petitioner was at 19729 Snowden in Detroit in a black pick-up truck at 1:48 p.m.; Edwards exits Snowden and enters the passenger seat of the black pick-up. Edwards was observed carrying a white sheet and goes to rear of black pick-up and wraps the sheet around an unknown object and enters Snowden and the black pick-up departs at 2:08 p.m.

Petitioner relies on the "innocent purpose" doctrine of *United States v. Gutierrez*, 559 F. 2nd 1278 (5th Cir. 1977): "to establish the intent essential to a conviction for conspiracy the evidence of knowledge must be clear and not equivocal. A suspicion, however strong, will not serve in lieu of proof." There were others present entering Snowden with objects around the same time Edwards entered with the sheet. For example, at 2:15 p.m. a black male wearing all black entered Snowden, two black males assisted a black female bringing a laundry basket into a

9

residence near Snowden and an older black male entered Snowden. (See Exhibit C). The government intercepted Sailor Hat [who is Hightower] (313-221-3885; Session 146) who was present on Snowden when he (Hightower) called and told Edwards he was outside (See Exhibit D at Bates stamp 001168-69). Edwards was observed standing next to a black Jeep (See Exhibit C) (the same kind of vehicle that was described in session 205 by Anthony Edwards in which Edwards was later heard telling someone it was Sailor Hat, that got 4 kilograms on January 31, 2011, and Edwards testified it was Hightower in the Jeep outside at 2:38 p.m. See Exhibit C, particularly the statement that Edwards was standing by the black Jeep at Page ID 4258; Vol. 5, Jury Tr., pages 650-657).

D. <u>Ground 16 and Ground 7 Objections Regarding *Brady, Giglio and Napue v. Illi*nois Violations</u>

The *Brady, Giglio and Napue* grand jury violations set forth by Petitioner on relate to false testimony given in grand jury regarding the January 31, 2011, alleged sale of and false testimony regarding the amount of money seizures from Petitioner.

Petitioner objects to the Magistrate's conclusion that such testimony was not false and/or that the testimony did not deny Petitioner due process. The government also refused to disclose to the defense Hightower's wiretap calls and pen register despite request therefor and Petitioner objects to the trial court's ruling and/or Magistrate's finding that Hightower's wiretap is not relevant because Petitioner is not on calls. See ECF No. 685. But that is the point, a Hightower wiretap without Williamson conversations is also evidence that multiple conspiracies existed in 2010 and later.

Petitioner asserts that Paris' affidavit[5] shows that Hightower was in fact on Snowden on January 31, 2011, as shown below and by the phone number used by Hightower since November 25, 2010 as follows:

On November 25, 2010 Edwards received a phone call from "313-221-3855, this person told him that this was his new number and during the conversation he wished him Thanksgiving (see Discovery 001666 at session 348 at Exhibit D), this number is Hightower's as shown below and confirmed by Edwards during trial as follows:

> "Q Okay. What about the older black man that entered the house? Was that O-Head or Hightower? A I don't know – I don't know O-Head. Hightower never came in. Q Hightower is just outside? A He wasn't – he never came in the house. Q He was outside? A He never comes in the House. Q So he waited outside? A yes. Q He was in the Jeep, wasn't he? A I don't recall what he was in. Q And he sent his people in with the cocaine, didn't he? A No." Pages 634-635 Jury Trial-Vol. 6 12/10/2014 Edwards.

> "BY MR. EARLY: Q Is that you on the phone there, sir? A Yes, it is. Q Who are you talking to? A DZ. Q And you talked about Sailor having some for you? A No, Sailor Hat, that's something we call – that was a nickname we called the guy, Sailor Hat. Q He had something for you? A That's Hightower." Page 656 Jury Trial – Vol. 6 12/10/2014 Edwards.

This evidence is reconfirmed below by the testimony of Agent Robinson:

> "BY MR. EARLY: Q Okay. Mr. Robinson, if I show you the call log, would you be able to look at that call log and determine the telephone number that was calling Mr. Edwards on the calls that I played? A Yes. If the number is on the call log, I would be able to tell you what number is on there. Q Fine. Thank you. Would you come over please and look at the call log on the screen – or you can put it on the screen? MR. EARLY: Okay. Would you show us tape number 14?"

> "BY MR. EARLY: What was the calling number? You're referring to session number 14 here? Tape number 14, yes, sir, session 14. Okay. Session 14 is saying that associated number is (313) 221-3855. Q Okay. And then tape number 33, which was the other one I played, where they were asking for four also. Okay, A Session number 33 would be (313) 221-3855. Q So that's the same call number as the first call? A That is the same number. Q Okay. Tape number 38 where they say they're going to wait until tomorrow, that's the one we played, what's tape 38? A Tape 38, I'm familiar with that number, but that's (313) 694-1316. Q That's Jones'

---

[5] Recognized and discussed at Page ID 6510 of the Report and Recommendation.

11

number A That's correct. Q That's Jones and Edwards saying they're going to wait for tomorrow then?" Jury Trial, Vol. 5, Page 486-488.

The 30-Day Report Warrant Application (Exhibit D) for Target Telephone "(248-470-2486)" between February 16, 2011 and February 25, 2011 states that: "Agents have identified Hightower as a kilogram quantity cocaine distributor and Jones has facilitated cocaine deals with Edwards. On January 31, 2011, Isaac Sheppard was arrested following a police pursuit that resulted in the seizure of a kilogram of cocaine that is believed to have been supplied by Edwards and Jones. Exhibit D at pages 4-5.

Defendant asserts that on January 30, 2011, after Jones was heard in call session 31 ordering four (4) kilograms, Edwards called his supplier, Hightower, at ("313-221-3855), in session 33 in which Edwards inquired about the four (4) kilograms that Jones just called Edwards for. Edwards placed a call, session 38, and told Jones to wait until tomorrow. The date Edwards and Jones sold to Shepperd on January 31, 2011 had nothing to do with Williamson.

> "A That's Jones' number, the 694-1316. Q Okay. Then we will go to 146 was the last one that I played, which is where they said, "I'm outside," on January 31st, 146. Is that the 221 number again? A That is the 221 number, yes. Q Okay. Then that's the same number as earlier, when they were ordering four on take 14, for example? A It was the same number as earlier, the content of the conversation."

Pages, 486-488 Jury Trial-Vol. 5 12/9/2014.

When looking at Discovery 001675 in session 27 (Exhibit F) by the phone number "(586) 477-7041." On January 28, 2011, Williamson is telling Edwards that he will be in Detroit tomorrow to bring in the Marijuana and that he was going to tell Daryl Sewell, that Edwards was going to pay in, to get some for the next load of Marijuana so he, Sewell will be ready for another load the following week in February of 2011. In light of this information the government knew that when Williamson was telling Edwards that he was about to snatch on January 31, 2011 at

session 164, that they are talking about Marijuana not Cocaine. Williamson was in Arizona with Sewell on January 28, 2011 during this call session 27.

In light of the foregoing the testimony presented to the grand jury regarding Williamson being the supplier of 4 kilos on January 31, 2011, was false.

To further show that the defendant received an unfair trial in violation of his Fifth and Sixth Amendment rights, and the prosecutor's misconduct, for example: (a) the Government had three (3) weeks to present their case, defendant had four (4) hours (b) the Government was allowed to present taped recorded conversations on January 30, 2011 where Jones was inquiring about four (4) kilograms of cocaine (session 31) from Edwards and their theory that, that phone call was in relation with a phone call on January 31, 2011, where Edwards contacts the defendant for Marijuana at session 164, where Edwards testifies that it is Cocaine when it was not.

Moreover, the Court intervened continually on the side of the prosecution when the defendant tried to prove that Discovery 001675 at session 31 and 33 by the phone number "(313) 221-3855" were related and showed the true supplier Hightower. On January 31, 2011, and before by other taped recorded conversations leading up to that event and after, the transaction of January 28, 2011, with an unknown buyer as shown at Discovery 001675 in session 14, 285, and 185 where Edwards identify Hightower as Sailor Hat, to Dennis Tate in furtherance of the criminal venture, and again on January 31, 2011 at Discovery 001675 in session 146 by the phone number "(313) 221-3855" in which Edwards' testified: ("Q Okay. What about the older black man that entered the house? Was that O-Head or Hightower? A I don't know – I don't know O-Head. Hightower never came in. Q Hightower is just outside? A He wasn't – he never came in the house. Q He was outside? A He never comes in the house. Q So he waited outside? A Yes. Q He was in the Jeep, wasn't he A I don't recall what he was in.") to that fact (Page 650 of Jury Trial-Vol. 6 12/10/2011);

13

(c) the judge intervened continually on the side of the prosecution during cross examination of Anthony Edwards and it affected counsel's ability to effectively cross examine Edwards in violation of defendant's Sixth Amendment right to effective assistance of counsel; and (d) defendant was denied a fair trial and the assistance of counsel when the trial court made remarks during trial which disparaged the defense, interfered with the defense examination of witnesses Edwards, Smart and Greg Jackson, denied the defense the opportunity to play a sufficient number of wiretap tapes at trial, and generally expressed its displeasure with Williamson's challenging or presenting evidence in this case as shown further below.

Government misconduct is further shown in the attached Warrant Application (Exhibit D) where the Agent is referring to events in February of 2011 that happened on January 31, 2011.

The prosecution's own evidence shows that quantities attributed to Williamson after Williamson withdrew from the conspiracy in 2005 and after Jackson went to prison in 2006 are minimal compared to the quantity attributed at sentencing. See Exhibit G where Williamson is attributed 500 pounds of marijuana and 63 kilograms of cocaine by the government in a bates stamp document. Because the conspiracy had ended, the amounts attributable to Williamson should be reduced further to just the incidents where Williamson's name is listed. Similarly, the call logs for Edwards' phone, Exhibit H, show that Williamson and Edwards communicated little, while Edwards and Hightower communicated constantly. These records support Williamson's argument then he was not involved in cocaine conspiracy during the listed time periods 2010 forward.

III

OBJECTIONS TO RULING ON DISCOVERY MOTION

Petitioner's discovery motion for information about Gregory Jackson's prison confinement, when combined which paralegal Otis Paris' Affidavit (ECF #658, page ID 4229) disclosing the Judgment and prison sentence, clearly should have been granted. This "gap" issue was clearly raised in relation to quantity at sentencing and in the 2255 Motion and also related to *Brady, Giglio, Napue* issues raised by implication in the 2255 Motion. As such, the motion for discovery should have been granted.

## CONCLUSION

      The sentencing should be vacated as the sentencing court never made findings of fact as to quantity and merely adopted the PSI conclusion and the quantity determination was based on perjured testimony. The conviction should be set aside because Jackson committed perjury, the prosecutor allowed the witness Jackson to commit perjury and did not correct and the prosecutor suborned perjury by encouraging Jackson to lie and testify he was on probation when in fact he was in prison. Petitioner was denied due process and denied a fair trial and sentencing under the Fifth and Sixth Amendments to the Constitution of the United States. Perjury by government witness and the subornation of perjury by the prosecutor should not be tolerated by the court.

      Respectfully submitted,

      /s/ S. Allen Early
S. Allen Early (P 13077)
Attorney for Petitioner[6]
670 Shelby, Suite 425
Detroit, MI 48226
(313) 962-2320

December 2, 2020

---

[6] Counsel hereby enters an Appearance as Counsel for Petitioner in the 2255 Motion proceeding.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the court's ECF system to their respective email address on December 2, 2020.

                                                  /s/ S. Allen Early
                                                S. Allen Early (P 13077)

December 2, 2020